**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Clyde Coy JORDAN, Defendant-
Appellant.**

**No. 18938.**

United States Court of Appeals,
Seventh Circuit.

Dec. 3, 1971.

Thomas Meyer, Belleville, Ill., Prentice H. Marshall, Champaign, Ill., for defendant-appellant.

Henry A. Schwarz, U. S. Atty., Jeffrey F. Arbetman, Ronald A. Lebowitz, Asst. U. S. Attys., East St. Louis, Ill., for plaintiff-appellee.

Before DUFFY, HASTINGS and KNOCH, Senior Circuit Judges.

DUFFY, Senior Circuit Judge.

Defendant Jordan was found guilty, after a jury trial, of a violation of Title 18 U.S.C. § 922(a) (6), of knowingly making a false or fictitious oral or written statement upon acquiring a firearm from a licensed dealer.

Defendant was alleged to have knowingly made a false statement to a federally licensed firearm dealer in connection with the acquisition of a firearm from that dealer. Specifically, the defendant was charged with knowingly

stating that he was not prohibited by 18 U.S.C. § 44 from receiving a firearm in interstate commerce when, in fact, so the Government claims, he was prohibited due to a 1954 conviction of embezzlement and forgery by mail.

In March 1970, defendant was tried before a jury on this charge for firearm violation. The jury disagreed. He was retried in September 1970 and the jury brought in a verdict of guilty. Defendant was sentenced to a two-year term of imprisonment.

In 1954, defendant was a U. S. Mail Carrier and was convicted of embezzling and forging checks taken from the mail. He was sentenced to a three-year term and was paroled after seventeen months.

Defendant returned to East St. Louis, married and raised a family of five children. He became active in political affairs. He became editor and publisher of the East St. Louis Monitor newspaper.

Defendant was active in a number of Negro organizations and in 1965 was appointed as an administrative aid to the Mayor of East St. Louis.

At the time of his appointment to this office, questions were raised as to his eligibility to hold office because of his prior conviction. Thereupon, he wrote to the Department of Justice and was informed that he had "not lost any citizenship by virtue of the federal conviction."

In December 1967, he was approached to run for the East St. Louis School Board, and again his eligibility to serve was questioned. He again wrote to the Department of Justice and was informed that certain privileges might be affected by State law. Defendant then wrote to the Attorney General of Illinois and he received a reply from the Governor. The letter stated " * * * with the recommendation of the Judge of the Federal Court, I am pleased to enclose your certificate of restoration to the Rights of Citizenship." He was thereafter elected to the School Board.

In November 1968, defendant applied for and obtained a firearm owner's identification card from the State of Illinois. On January 17, 1969, the Board of Fire and Police Commissioners commissioned him as a "Special Policeman." During this period of public service, defendant carried a firearm because his life had been threatened on several occasions and there were many shootings and bombings in East St. Louis. This gun was stolen in April 1969.

On April 29, 1969, he purchased a new gun and signed Treasury Form 4473 which contains language in small print which includes the statement that people convicted of a felony are prohibited from purchasing a firearm.

Defendant Jordan never denied that he had purchased the weapon in question or that he previously had been convicted of a felony or that he had signed Treasury Form 4473 at the time of the purchase of said weapon.

The defense offered by defendant during the entirety of the two trials and upon appeal has been his good faith in believing he could purchase the weapon in question legally. He had pleaded guilty to an offense fifteen years prior to this indictment in 1969. He served his time, complied with his parole and returned to East St. Louis where he married and raised a family. From the record, it is evident he became a respected leader in the community.

Defendant Jordan, on three different occasions, applied for clarification and restoration of his rights of citizenship. Even before he purchased his first gun which was stolen, he had applied for and received the requisite firearm owner's identification card from the State of Illinois.

Referring to the letter sent to defendant by the Governor of Illinois, the trial judge stated to the jury: " * * * I was the Judge and I gave no written or oral recommendation as set forth in that letter. * * *"

▪ The Supreme Court said in Quercia v. United States, 289 U.S. 466,

470, 53 S.Ct. 698, 699, 377 L.Ed. 1321 (1933) in reversing a criminal conviction because of remarks made to the jury during the trial judge's recitation of instructions,

> "This privilege of the judge to comment on the facts has its inherent limitations. His discretion is not arbitrary and uncontrolled, but judicial, to be exercised in conformity with the standards governing his judicial office. In commenting upon testimony he may not assume the role of a witness. He may analyze and dissect the evidence, but he may not either distort it or add to it. His privilege of comment in order to give appropriate assistance to the jury is too important to be left without safeguards against abuses. * * * "

We hold that such statement by the trial judge was reversible error in this case. The trial judge mistook personal knowledge for judicial knowledge.

Pertinent here is the statement in Wigmore § 1805: "It is equally clear * * * that the judge may not lawfully contribute any testimony for the jury's consideration unless he takes the stand as a witness; otherwise the opportunity for cross examination is lost and the hearsay rule violated."

■ We do not agree with the Government's contention that the error, if any, was harmless. The doctrine of judicial notice of official records does not avoid the error committed in this case.

■ We hold that it was further reversible error for the Court, over objection, to permit cross examination of defendant's reputation witnesses concerning a state court indictment which had been returned against defendant subsequent to the transaction here in question and which subsequently was dismissed by the State.

The Court of Appeals in Gross v. United States, 394 F.2d 216, 223 (8 Cir., 1968), reasoned:

> "It is our conclusion that when the prosecution attempts to attack the credibility of the defendant's character witnesses * * * that there should be a prior showing, out of the hearing of the jury, establishing to the trial judge's satisfaction the truth of the basis for such inquiry and, further, cautionary and guiding instructions should be given, preferably both at the time of the inquiry and in the closing charge to the jury."

Here, the Court permitted cross examination of defendant's reputation witnesses without prior consideration by the Court of the basis of such inquiry out of hearing of the jury or without any instructions to the jury with respect to the prejudicial questions asked by the prosecution.

■ Another reason why the conviction of defendant cannot be affirmed is that there was no evidence that Joseph Dooley, from whom the defendant had acquired the firearm, was a licensed dealer within the meaning of Section 922(a) (6) of Title 18.[1] Therefore, a material or "essential element" of the offense for which defendant was convicted was at no time introduced into evidence or in any manner proven by the Government. On this failure of proof alone the conviction fails.

The judgment of the District Court is Reversed.

---

1. 18 U.S.C. § 922(a) (6) provides in pertinent part it shall be unlawful "for any person in connection with the acquisition * * * of any firearm * * * from a * * * *licensed dealer* (emphasis supplied) * * * knowingly to make a false or fictitious oral or written statement. * * * "