UNITED STATES

v.

**Robert D. MIDKIFF, 460 78 7894, Second Lieutenant (0–1), U.S. Marine Corps Reserve.**

**NMCM 82 0758.**

U.S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 25 March 1981.

Decided 19 April 1983.

1044

CDR Matthew J. Wheeler, JAGC, USNR, Appellate Defense Counsel.

CAPT W.J. Ciaravino, USMC, Appellate Defense Counsel.

CDR Jay M. Siegel, JAGC, USNR, Appellate Government Counsel.

Before ABERNATHY, Senior Judge, and BARR and MALONE, JJ.

MALONE, Judge:

Contrary to his pleas, appellant was convicted by a general court-martial composed of members of the offense of stealing mail matters in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934.[1] He was sentenced to forfeit $1,000.00 pay per month for one month and to be dismissed from the United States Marine Corps.[2] Appellant, among

---

1. Appellant was acquitted of the offense of violating a general order or regulation in violation of Article 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 892.

2. The fact appellant was a member of the United States Marine Corps Reserve is of no moment. We deem the announcement of this sentence to include necessarily appellant's dismiss-

other assignments of error, complains that the cassette tapes alleged as the contents of the package he was charged with stealing from the mails were erroneously admitted into evidence, having been found in appellant's room as the result of an illegal search and seizure.

■ There is no merit to this assignment of error. We find the voluntariness of appellant's consent conditioned upon the totality of the circumstances. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Clear and convincing, unrebutted evidence discloses appellant to have voluntarily consented to the search of his room, albeit a consent which limited the scope of the search to the subject cassette tapes. *United States v. Castro,* 23 U.S.C.M.A. 167, 48 C.M.R. 782 (1974); Mil.R.Evid. 314(e). *See United States v. Dutil,* 14 M.J. 707 (N.M.C.M.R.1982), reconsideration denied 16 September 1982 (where evidence of the voluntariness of an accused's conversation with police interrogators is easily rebuttable by that accused, the fact it is not most reasonably infers its voluntariness). Although appellant's voluntary consent to the search of his room was given initially without restriction to its scope, the subsequent withdrawal of the consent was for the purpose of limiting the scope of the search so as to exclude from the object of the search certain photographs. *Compare Castro, supra, and United States v. Cady,* 22 U.S.C.M.A. 408, 47 C.M.R. 345 (1973).

■ Appellant did not withdraw his consent to the search for the contraband cassette tapes. The search for and seizure of the tapes was lawful, notwithstanding a lack of probable cause to believe a crime had been committed by the appellant's possession of the photographs which nevertheless prompted the issuance of a search warrant for appellant's room *for the photographs.*[3] *Compare Schneckloth, supra, and Castro, supra, with Aguilar v. Texas,* 378

U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), *and Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). Therefore, the illegality of the search for the photographs does not taint the legality of the search for the cassette tapes so long as no evidence derived from the former was instrumental in securing the appellant's conviction. *Cf. Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, 455 (1963); *United States v. Schultz,* 19 U.S.C.M.A. 311, 41 C.M.R. 311 (1970).

■ A question of closer resolve posed by appellant derives from his complaint that prejudicial error occurred during the case in chief when trial counsel was permitted over defense objection to cross-examine three defense character witnesses, Staff Sergeant (SSgt) D,[4] Mr. D, and Mr. P, regarding their knowledge of specific instances of misconduct alleged to have been committed by appellant. The foundation for their opinions derived from their association with appellant in their professional relations as air traffic controllers and their commonly shared off-duty activities over a period of the preceding one and a half years. These three witnesses each testified that in his opinion appellant possessed the virtuous character traits of honesty and trustworthiness. Since appellant stood charged with an offense of stealing mail matters while acting as a mail orderly, opinion evidence of these pertinent character traits offered by appellant was admissible. Mil.R.Evid. 404(a)(1); Mil.R.Evid. 405(a).

The questions posed by trial counsel to these three character witnesses were:

1) Have you heard the accused was charged with stealing two drinks from the Jacksonville Country Club?

2) Have you heard the accused falsified a registration record in order to obtain a room in the BOQ by stating he was single when he was, in fact, married?

al from the Reserve component of the United States Marine Corps.

3. No photographs were found which were deemed by the investigators to be evidence of the commission of any crime.

4. Staff Sergeant D also provided testimonial evidence as an alibi witness for appellant.

3) Have you heard the accused asked a potential trial witness to lie for him to his defense counsel?[5]

The first question concerned an incident that was the basis for a charge against appellant at this same trial, although it had since been dismissed by the military judge. That incident occurred subsequent to the mail larceny offense of which appellant now stands convicted. The second question concerned an incident that had been investigated for possible trial by the Article 32[6] investigating officer, but which had not been referred to trial by the convening authority. It antedated the mail larceny offense. The time frame of the incident upon which the third question is based is self-evident.

It is significant that three of the five sitting members had read a newspaper account of the pending court-martial, although none of the three reported recalling a discussion of these particular incidents in the article. Two of the members excused from the court after being challenged had recalled reading a news account of the court-martial which included discussion of the country club incident. It is therefore plausible that the sitting members, once having read the article, later may have recalled other details of the article regarding appellant after having their memories jogged by the questions of the trial counsel. Nevertheless, defense counsel requested no additional *voir dire* of the members in order to make this determination after these questions had been asked.

Criminal courts deriving their rules of evidence from the common-law tradition, as do our courts-martial, ordinarily deny to the prosecution the opportunity to resort to evidence of an accused's evil character, disposition, or reputation, no matter how probative that evidence may be, in order to establish the accused's guilt. *Michelson v. United States,* 335 U.S. 469, 475, 69 S.Ct. 213, 218, 93 L.Ed. 168, 173 (1948); *United States v. Sellers,* 12 U.S.C.M.A. 262, 30 C.M.R. 262 (1961); Mil.R.Evid. 404. Having denied this line of evidence to the prosecution so as to avoid it being overly weighted by the fact finder and resulting in undue prejudice, unfair surprise, and a confusion of the issues, we nevertheless open it to the accused where it is relevant to showing him less likely to have committed the offenses charged. *Michelson,* 335 U.S. at 476, 69 S.Ct. at 219, 93 L.Ed. at 174; *United States v. Lewis,* 482 F.2d 632 (D.C.Cir.1973); *Shimon v. United States,* 352 F.2d 449 (D.C.Cir. 1965); *United States v. Giles,* 13 M.J. 669 (A.F.C.M.R.1982); Mil.R.Evid. 404(a)(1). *Cf.* Mil.R.Evid. 403.

Once having placed his character circumstantially in issue, however, an accused opens himself to the admission of evidence offered by the Government in rebuttal. *Shimon, supra; Sellers,* 12 U.S.C. M.A. at 268, 30 C.M.R. at 268; Mil.R.Evid. 404(a)(1). Yet, whether offered by an accused or by the Government in rebuttal, the method of proving an admissible character trait "used circumstantially to show that a person possessed [of such] a certain trait of character . . . is thus likely [to have] acted in conformity with that trait . . .", is limited to opinion and reputation evidence only. *Giles, supra,* at 671; Mil.R.Evid. 405(a). Inquiry into relevant specific instances of conduct is permissible, however, on cross-examination of a character witness giving opinion or reputation testimony. Mil.R.Evid. 405(a). But when such an inquiry of specific instances of misconduct is made on cross-examination it is only for the limited purpose of testing the credibility of that witness. *Michelson, supra; Lewis, supra; Shimon, supra. See generally* S. Saltzburg, L.

**5.** It is suggested that "Have you heard" questions may not be appropriate when examining opinion witnesses, as it is the witness' own belief to be tested by these questions, not that of the community. S. Saltzburg, L. Schninasi, & D. Schlueter, Military Rules of Evidence Manual (1981), at 182. *Cf. Michelson v. United States,* 335 U.S. 469, 482, 69 S.Ct. 213, 221, 93 L.Ed. 168, 177 (1948). We suggest that there is little distinction between "Have you heard" and "Do you know" questions asked of opinion witnesses, as either type effectively provides the test they are intended to provide, as they did in this case.

**6.** Article 32, UCMJ.

Schinasi, & D. Schleuter, Military Rules of Evidence Manual (1981), at 188–189 (hereinafter cited as Saltzburg).

█ Although an accused may forfeit the protection accorded him by the law regarding adverse evidence of his good character when he attempts to show his good character as a defense to the charges, trial counsel nevertheless are not given free rein to counter that evidence, even within the parameters of opposing opinion and reputation evidence and inquiries into specific instances of conduct on cross-examination. Trial judges must still exercise discretion, albeit wide discretion, in controlling the use of these devices so as to prevent the degeneration of the trial into a matter of collateral inquiry by efforts of impeachment and rehabilitation. *Shimon, supra,* at 453.

The particular events made the subject of an inquiry on cross-examination are not generally limited by their nature, even including prior convictions or arrests, so long as the event exhibits conduct by the accused inconsistent with the trait to which the witness has testified. *Lewis, supra* at 638. Trial judges must be alert to the undue prejudice presented where the prior conduct is of a similar nature as the conduct on trial but, when properly framed, the question may be all the more probative in testing the credibility of the witness. *Cf. Shimon supra* at 454. Nor does the impropriety suggested by some commentators derived from questions based upon conduct which itself is or has been the subject of charges before the same court prohibit the Government from posing a properly framed question. *Compare* Saltzburg, at 189, *with United States v. Senak,* 527 F.2d 129 (7th Cir.1975), cert. denied, 425 U.S. 907, 96 S.Ct. 1500, 47 L.Ed.2d 758 (1976) and *United States v. Morgan,* 554 F.2d 31 (2d Cir.1977).

█ The time of the formation of the opinion of the reputation in relation to the occurrence of the event in question is a factor to be considered by the trial judge in permitting the questioning. Although this factor has received disparate treatment among the courts, it is generally recognized that testimony of an accused's reputation subsequent to the publication of the charge on trial is inadmissible because it is an untrustworthy index of character. *Lewis, supra* at 641. Accordingly, proof of reputation generally has been limited to the existing reputation of the accused prior to and not remote from the date of the offense charged. *Id.*[7] A further derivative of this reasoning is the limitation placed by many courts on the cross-examination of reputation witnesses, limiting the questions testing the credibility of their testimony to events preceding the time in issue. *Id.* at 642.

Remoteness of the event in time must, of course, be weighed by the trial judge in determining whether to permit the questions. The ten year time limitation upon evidence of a conviction for the purposes of impeaching the character of a witness, Mil. R.Evid. 609(b), is not applicable to testing the credibility of reputation testimony, however. *See United States v. Edwards,* 549 F.2d 362 (5th Cir.1977), cert. denied sub nom. *Matassini v. United States,* 434 U.S. 828, 98 S.Ct. 107, 54 L.Ed.2d 87 (1977) (cross-examination of character witness with knowledge of accused's reputation based upon professional and personal relationship of more than 20 years duration permitted as to accused's conviction and arrests occurring in 1956, 1961, 1970, and 1972). *See Michelson, supra* (at trial in 1947, character witnesses knowing accused for more than 30 years asked of knowledge of accused's arrest in 1920 for receiving stolen goods). With such precedents as these regarding whether the events in question may be too remote, the trial judge's discretion will best be guided, as in all questions relative to this issue, by the exposition of Mil.R.Evid. 403, weighing the probative value of the evidence against the danger of unfair prejudice to the accused.

---

7. An exception to this rule is made for one's reputation for testimonial honesty which is established by reputation evidence at the time of trial and during periods not remote thereto. *United States v. Morgan,* 554 F.2d 31 (2d Cir. 1977); *United States v. Lewis,* 482 F.2d 632 (D.C.Cir.1973).

The foregoing discussion of the time factor as it relates to reputation testimony is not as persuasive for opinion testimony which, because of its personal nature, is more readily susceptible to unerring scrutiny on direct and cross-examination. Additionally, *Lewis* recognizes the inflexibility of a pat rule creating a cutoff point as to time in issue.

> Not every situation calls for exclusion of questions exploring knowledge of events occurring after the time in issue. Not every subsequent event is an unacceptable topic, not a topic so prejudicial as to outweigh its probative significance; some events otherwise objectionable perhaps could be made unobjectionable. (Footnotes omitted).

*Lewis, supra* at 642. *See also Senak, supra.*

Thus, we deem it better to leave to the *informed* discretion of the military judge whether to permit cross-examination as to events transpiring subsequent to the offense charged, taking into consideration all relevant factors deserving of consideration. Informed discretion is, in fact, at the heart of this entire matter, weighing the probative value of the information to be gained against the harm of undue prejudice to the accused that may flow from the mere asking of the question. To this end, the trial judge should first require to his satisfaction a showing by the Government, out of the hearing of the members, of a basis for the truth of the proposed inquiry. *Lewis, supra; United States v. Jordan*, 454 F.2d 323 (7th Cir.1971). *See also Michelson, supra.* It is here that the court may refine the question, narrowing its scope where necessary to those issues germane to the trial, and making it unobjectionable where it may previously have been so. It is here, also, that the court may best determine whether the real target of the question is the accused or the test of the witness' credibility. *Cf. Shimon, supra.*

Having permitted the question, the trial judge must instruct the members of its purpose and the limitations to be placed upon it in their deliberations. They must be instructed that it is solely a test of the weight to be accorded the witness' opinion or, in those instances involving reputation testimony, the standard of the reputation within the community; they are not to assume the incidents described in the inquiry actually occurred; the question has no other evidentiary value except to assess the worth of the witness' testimony. *Lewis supra; Jordan, supra. See also Michelson, supra.*

 Applying these several principles to our case at hand, we can see that the military judge was less than circumspect when permitting the trial counsel to pose to appellant's character witnesses on cross-examination the three questions in issue. Yet, as we have seen, "numerous and subtle considerations difficult to detect or appraise from a cold record" are concerned with the issue at hand. *Michelson*, 335 U.S. at 480, 69 S.Ct. at 221, 93 L.Ed. at 176. Therefore, it is only upon a clear showing of prejudicial abuse in such a case that an appellate court will disturb the ruling of the trial court.

It is apparent that once appellant elicited from SSgt D his favorable opinion regarding appellant's traits of trustworthiness and honesty not only had the door been opened for trial counsel to rebut this evidence with contrasting opinion and reputation evidence but, it was also permissible within the discretion of the military judge to cross-examine SSgt D and the subsequent character witnesses regarding specific instances of conduct which would test the credibility of their opinions. Trial counsel gave evidence of his expressed good faith belief in the truth of the specific instances made the subject of his inquiry when he informed the military judge during an Article 39(a), 10 U.S.C. § 839(a), session [8] of his intent to ask these questions. Trial counsel sought the military judge's permission to examine the witnesses in this manner, thereby seeking to avoid any possible prejudice that may have been imparted by asking the question in the member's presence without prior approval, only to have it ruled inadmissible by the military judge upon defense objection.

---

**8.** Article 39(a), UCMJ.

The military judge required no information of the trial counsel other than the questions themselves in satisfaction of his own belief in the truth of the inquiry. In fact, defense counsel, of which there were three, demanded none. We readily note that because of his earlier action dismissing the charge involving the theft of drinks from the country club, the truth of the first question was already within the purview of the military judge without need of further proof. Evidence of the truth of the second was available to the military judge in the investigating officer's report and received passing advertence thereto in the comments of the individual military counsel when arguing in objection to the questions. No offer of proof attended the proposed third question. Yet, in the absence of a properly framed objection[9] by the defense and in conjunction with the other considerations taken of this matter, appellant's complaint of this point will not now be heard.

Nor can there be serious objection to the time period of the first two questions posed. The former, the country club incident, even though occurring more than three months after the single charge now remaining, occurred prior to the preferral (or publication) of charges and was initially itself one of the charges in this case. The latter incident, falsification of a BOQ registration, antedated the instant charge by approximately nine months. Only the third question regarding the solicitation of a witness to lie to appellant's defense counsel, occurring apparently as it does after the preferral of charges, may give anyone pause. But it certainly gave defense counsel no cause for concern. They expressed no objection on the basis of this specific issue, giving evidence of their lack of concern that the time element was an issue of any importance. We do not find it to be an unacceptable topic in light of the opinion evidence offered by the defense and was certainly probative of the issue then at hand, the testing of the witnesses' credibility.

The only error of note that we find in this matter is the failure of the military judge to give a complete and proper instruction.[10] Instead of informing the members the questions were designed to weigh the credibility of the opinions of the character witnesses and cautioning them of its limited use, the military judge gave the standard instruction when evidence of other offenses or acts of uncharged misconduct by the accused are properly admitted in evidence. *See* paragraph 9–31, Military Judges' Guide, Department of the Army Pamphlet 27–9, dated May 1969. Therefore, having been told erroneously that the questions were evidence, the military judge then took from the members whatever val-

---

9. The objection to the questions was cited by defense counsel to be based upon Mil.R.Evid. 403 in that the probative value was claimed to be outweighed by the undue harm appellant would suffer if the questions were allowed to be asked. There was no question raised by the defense as to the truth of the allegation. This in itself suggests their belief in the truth of the matter. They also expressed their concern for the confusion of the issues at trial and feared the members would be misled by them.

10. The instruction given reads:

Also, gentlemen, you are advised that in this case evidence that the accused was charged with stealing drinks at the Jacksonville Country Club, that he falsified or allegedly falsified records to obtain a BOQ room and that he allegedly asked a witness to lie to his defense counsel were admitted for a limited purpose. Therefore, such evidence may be considered only for the limited purpose of its tendency to rebut the contention that the accused was a person of good character and that he was a person of good truth and veracity. I wish to emphasize that such evidence may be considered by you for no other purpose whatsoever. You may not infer from such evidence that the accused has an evil disposition or criminal propensity, and he, therefore, committed the offenses alleged.

One cannot fail to notice that here, and elsewhere in his instructions, the military judge confused the character traits of honesty and trustworthiness which were the subject of the testimony of appellant's character witnesses and the traits of truth and veracity mentioned in his instructions. We do not believe the members to have been misled by this inadvertent substitution of character traits no matter how closely allied they be in principle. We again note the lack of defense objection.

ue these questions may have had as evidence[11] without having informed them what value the questions truly possessed. The instruction served only a limited purpose by informing the members that they could use this "evidence" to rebut the defense contention of good character. It did not inform them of its purpose to provide them the opportunity to weigh the credibility of the testimony.

 Defense counsel, however, neither offered a proposed instruction on this matter when given the opportunity to do so by the military judge nor did they object to the instruction as given and ask for additional instructions. Again, this is evidence of the lack of prejudicial harm perceived by the defense at trial to have been done to the accused by these questions and the instruction. Their perception is more readily discernible from the cold record than any evidence of harm itself, of which we can find none. Nevertheless, we must look to the effect this instruction had upon the members in their deliberations. We do not find this instruction to have tainted in any manner the findings in this case, as it was not so misleading as to have resulted in appellant's conviction where in the face of a proper, complete instruction appellant would have been acquitted.

Whatever prejudicial value there may have been in the asking of these questions seems further attenuated on the whole of the record because of the responses given by the character witnesses themselves to the line of inquiry and the abandonment of that line as a tactic by the trial counsel with the remaining defense character witnesses. One witness had heard reports of each of the incidents but was unshaken in his opinion of appellant, adding appellant was one of the best Marine officers the witness had met in his seven years of association with them in his civilian occupation. All had heard of the charges stemming from the country club incident. None was adversely affected by the reports he had heard and one emphatically expressed his disbelief that appellant had either lied or requested another to lie in his own behalf. After these three character witnesses had expressed their high opinions of appellant's integrity, four other character witnesses who had known appellant not only over the span of appellant's Marine Corps career, both as an officer and as an enlisted member, but also as a childhood friend and college roommate, gave equally glowing testimony regarding appellant's traits for honesty and trustworthiness. Trial counsel did not question these witnesses regarding their knowledge of the three incidents in question as a test of their opinions. Taking each of the foregoing circumstances into consideration, we find appellant to have suffered no undue harm from the questions posed by trial counsel to SSgt D, Mr. D, and Mr. P.

 We now turn to an error, although not the subject of one of appellant's assignments of error, of significant moment meriting our comment. Following the testimonies of SSgt D, Mr. D, and Mr. P, the defense called Major M as its next character witness. In laying the foundation for his opinion testimony, it was disclosed that Major M's opinion of appellant's trait for honesty derived from his contact with appellant over a period of two months the previous year when, in his capacity as the command's coordinator for the Air Station's Navy Relief Fund Drive, Major M had supervised and been responsible for appellant's activities as the Drive's key man for Headquarters and Headquarters Squadron. Appellant had reported directly to Major M no less than weekly during the course of the

11. We recognize the value that appellant's solicitation of a witness to falsify his story to appellant's defense counsel has as admissible evidence of appellant's consciousness of guilt, if believed by the members. Like all evidence of uncharged misconduct admitted under Mil.R. Evid. 404(b), the military judge must weigh with extra concern its probative value against the risk of undue harm as required by Mil.R. Evid. 403. *United States v. Borland,* 12 M.J. 855 (A.F.C.M.R.1981). The military judge's instruction regarding uncharged misconduct precluded the members from using it to show a consciousness of guilt, however, regardless of the fact there was no admissible evidence of it, even if true.

drive. Yet, Major M was not permitted to give his opinion of appellant's honesty. Trial counsel objected to the admission of that evidence, claiming: 1) the evidence was cumulative of that given by the previous three witnesses; 2) defense counsel had failed to lay an adequate foundation for the opinion; and, 3) the opinion was impermissibly based upon one specific, although unarticulated, act or incident, citing Mil.R. Evid. 405. Overruling the objection on the grounds of cumulativity, the objection otherwise was sustained. This was error.

As noted earlier, Mil.R.Evid. 404 permits the admission of pertinent character evidence which tends to show an accused less likely to have committed an offense charged. Once admissible, Mil.R.Evid. 405 comes into play, delineating the permissible methods of proving character evidence. This is usually done under Mil.R.Evid. 405(a), used circumstantially to show a character trait by reputation or opinion testimony. *Giles, supra* at 670–671. Mil.R. Evid. 405(b) permits the use of proof of specific instances to prove a character trait only when the trait is an *essential* element of either the offense charged or a defense. This rule has little application in the military. *Id.* at 671. So, to the extent that the trait of honesty was neither an essential element of either of the offenses charged nor of the defenses raised to each by the appellant, trial counsel was correct in objecting to the use of a specific instance of honesty to prove this trait.

The opinion of Major M was not based upon a specific incident, however. Although certainly derived from one specific task given to appellant by his command, that task of coordinating the collection of Navy Relief funds within his squadron required periodic contact with Major M in his supervisory role over the course of a *two month* campaign. Such is not evidence of one specific instance but of a series of incidents which provided the proper foundation for Major M to have formed an admissible opinion within Mil.R.Evid. 405(a).

Major M's opinion, having been properly founded by defense counsel, was no more an opinion based upon one specific instance of conduct than the opinion of a department store manager of the honesty of one of the sales persons founded upon their professional relationship. His opinion was no less worthy of admission than the opinion of the previous witnesses who derived their opinions of appellant's honesty from their professional association with him over the period of one year. Though Major M's opinion derived from an association of but two months, it was based upon a professional association involving a charity campaign drive, whereas the previous witnesses' professional associations with appellant were as air traffic controllers. We do not believe the latter associations to provide even as concrete a foundation for the trait of honesty as we readily see in the former association.

Further, Major M *was* permitted to testify as to his opinion of appellant's trait of military good character. Surely if his association permitted him to have formed that opinion, Major M should have been permitted to express his opinion regarding appellant's honesty.

Under the circumstances of this case, however, it is clear beyond a reasonable doubt that the error of the military judge, in giving the instruction as to uncharged misconduct after permitting as he did the cross-examination of the three defense character witnesses and excluding the opinion testimony of Major M, has not prejudiced appellant so as to require our setting aside the finding and sentence of the Charge remaining. Having considered the devastating strength of the Government's case and the serious weaknesses of the defense attempts to explain away appellant's possession of the four cassette tapes in question, we are convinced of appellant's guilt beyond a reasonable doubt. We are also convinced of the appropriateness of the sentence adjudged in this case.

Corrective action, however, is nevertheless required for the sentence. In approving the forefeitures of $1,000.00 pay per month for one month and ordering them to apply to pay due on and after the

date of his action, the convening authority overlooked the fact that the sentence did not include confinement. Forfeitures may not be applied under these circumstances until the sentence is ordered into execution.[12] Article 57, UCMJ, 10 U.S.C. § 857; para. 88d(3), MCM. All rights, property, and privileges of which appellant has been deprived as a result of this error shall be restored. Accordingly, the findings and sentence, as approved on review below, are affirmed.

Senior Judge ABERNATHY and Judge BARR concur.

---

12. This quirk in our law will thus deprive the sentencing body of its intended punishment, inasmuch as it is not likely appellant will have any pay due from which forfeitures may be applied when his dismissal is ordered executed. Thus, another convicted criminal will escape the full intent of his intended sentence because of this anamoly. Relief from this situation by congressional action is long overdue.