UNITED STATES, Appellee,

v.

Sergeant Larry F. PEARCE,
452–96–2608, United States
Army, Appellant.

SPCM 19010.

U.S. Army Court of Military Review.

March 20, 1986.

For Appellant: Major Edwin D. Selby, JAGC, Captain Edmund S. Bloom, Jr., JAGC (on brief).

For Appellee: Colonel James Kucera, JAGC, Lieutenant Colonel John T. Edwards, JAGC, Captain Andrew D. Stewart, JAGC, Captain Charles S. Arberg, JAGC (on brief).

Before WOLD, FELDER, and NAUGHTON Appellate Military Judges.

## OPINION OF THE COURT

WOLD, Senior Judge:

In a contested trial before members, appellant was convicted of a larceny and a housebreaking[1] committed at Spangdahlem Air Force Base, Federal Republic of Germany.

During the trial on the merits, the trial defense counsel elicited the following testimony regarding appellant's character for honesty:

Q: How long have you known the accused?

A: I knew him at Fort Lewis, Washington, probably two and a half years.

---

1. Articles 121 and 130, Uniform Code of Military Justice, 10 U.S.C. §§ 921, 930.

Q: And during that time, were you a member of his unit?

A: Yes, Sir.

Q: And in your opinion—do you have an opinion about his honesty?

A: He has always been honest. I worked for him for a couple of months.

At a side bar conference, the trial counsel then requested permission to ask whether the witness was aware that appellant had been a suspect who was investigated for a larceny at Fort Lewis. The defense objected on the grounds urged before us, which are outlined below. During a hearing on the defense objections, it developed that the witness had met appellant in 1980 at Fort Lewis, where they were in the same unit for a few months. The incident the trial counsel wanted to ask about occurred in January, 1982, while the witness and appellant were both still at Fort Lewis, but after appellant had been transferred to a different unit. After assuring himself that the trial counsel had a good-faith basis for asking the question, the trial judge overruled the defense's objections.

The following exchange then took place between the trial counsel and the witness before the members:

Q: ... [Y]our opinion was that the accused was an honest person up until this incident [for which he is being tried]. Is that correct?

A: Yes, sir.

Q: What was that opinion based on, that he was honest?

A: Well, I had no reason to doubt his honesty.

Q: Now, were you aware of the fact that Sergeant Pearce, the accused today, was a suspect and was under investigation by the CID for the larceny of four tires and other items from a Buick Regal, the replacement value of which was approximately $950.00?

A: No, sir, I do [sic] not.

The trial judge promptly gave the members the following instruction:

Now, the testimony concerning that MP Report is only—or this prior investigation was only admitted to test the witness' basis of opinion and that is the only purpose that it is for and that is the only purpose that you will consider it for. So, do you have any questions of this particular witness or any of his testimony?

The members had no questions.

We decline appellant's invitation to reverse the trial judge's ruling.

In *Michelson v. United States,* 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948), Justice Jackson traced the intricacies of this area of the law with clarity and comprehensiveness not since equaled. Among other things, he pointed out that the common law foreclosed prosecution use of character evidence to prove the defendant's guilt, but allowed the defendant to use character evidence if he chose. Such defense evidence opened the door to prosecution inquiry into the defendant's character. One of the techniques thus made available to the prosecution was the use of "Have you heard?" questions during cross-examination of defense reputation witnesses. In rejecting an invitation by one of the United States Courts of Appeal to modify one aspect of these rules, Justice Jackson emphasized the illogical and anomalous—yet effective—structure of the law in this area.

We concur in the general opinion of courts, textwriters, and the profession that much of this law is archaic, paradoxical and full of compromises and compensations by which an irrational advantage to one side is offset by a poorly reasoned counterprivilege on the other. But somehow it has proved a workable even if clumsy system when moderated by discretionary controls in the hands of a wise and strong trial court. To pull one misshapen stone out of the grotesque structure is more likely simply to upset its present balance between adverse interests than to establish a rational edifice.

The present suggestion is that we adopt for all federal courts a new rule as to cross-examination about prior ar-

rest.... The confusion and error it would engender would seem too heavy a price to pay for an almost imperceptible logical improvement, if any, in a system which is justified, if at all, by accumulated judicial experience rather than abstract logic.

335 U.S. at 486–487, 69 S.Ct. at 223–224.[2]

Under the Military Rules of Evidence, what was said in *Michelson* about reputation evidence applies also to opinion evidence.[3] Among other reasons, this is so because Military Rule of Evidence 405(a), like its counterpart in the Federal Rules of Evidence, allows an accused to prove his character by using either reputation or opinion evidence, whereas, under the common law rule applicable at the time *Michelson* was decided, only reputation evidence was admissible to prove character.[4]

Military Rule of Evidence 404 provides in pertinent part:

(a) *Character evidence generally.* Evidence of a person's character or a trait of a person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except:

(1) *Character of the accused.* Evidence of a pertinent trait of the character of the accused offered by an accused, or by the prosecution to rebut same ...

Military Rule of Evidence 405 provides in pertinent part:

(a) *Reputation or opinion.* In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

■ Appellant claims error on four grounds. First, citing *Awkard v. United States,* 352 F.2d 641 (D.C.Cir. 1965), he argues that when opinion testimony about a trait of character is being tested by cross-examination under Rule 405(a), the inquiry should be limited to events which occurred during the period on which the opinion was based. Second, he argues that the trial counsel's question exceeded the scope of the testimony elicited by the defense. These two arguments are sufficiently overlapping to be treated together. The short answer is that events in the time frame covered by the trial counsel's questions were relevant to the opinion expressed by the witness. The witness had testified that he had known appellant for "probably two and a half years;" that, in his opinion, appellant had "always been honest;" and that this opinion covered the entire period up until the incident for which appellant was being tried. Clearly, then, the theft about which the trial counsel inquired took place during the period on which the witness based his opinion. It is therefore irrelevant to the disposition of this case whether *Awkard* is good law and, if so, whether it applies in trials by court-martial.

■ Appellant's third argument is that his status as a suspect was not a "specific instance of conduct." The answer is that the law simply does not forbid "Have you heard?" questions (or, by extension, "Do you know?" questions) merely because they relate to inchoate events. *See, e.g., Michelson,* 335 U.S. at 472, 479, 482–484, 69 S.Ct. at 216, 220, 221–222; *United States v. Midkiff,* 15 M.J. 1043, 1047 (N.M. C.M.R.), *pet. denied,* 17 M.J. 89 (C.M.A. 1983).

■ Appellant most closely approaches paydirt with his fourth argument, which is that the questions were more prejudicial

---

2. *See also id.* at 477–79, 69 S.Ct. at 219–20.

3. *See, e.g.,* S. Saltzburg, L. Schinasi, & D. Schleuter, *Military Rules of Evidence Manual* 188 (1981) [hereinafter cited as *Military Rules of Evidence Manual*]. Appellant agrees. Appellant's brief at 8 n. 1.

4. The use of opinion evidence by the defense legitimizes the use of "Do you know?" questions, which were formerly not permitted, on cross-examination. *Military Rules of Evidence Manual, supra* at 188; *cf. Michelson,* 335 U.S. at 482, 69 S.Ct. at 221.

than probable and therefore should have been precluded under Military Rule of Evidence 403, which provides that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." That Rule 403's balancing test must be applied to "Have you heard?" or "Do you know?" questions appears indisputable. *See, e.g., Awkard*, 352 F.2d at 643–644; *Midkiff*, 15 M.J. at 1047; *Military Rules of Evidence Manual, supra* at 176; *see also Michelson*, 335 U.S. at 480 n. 17, 486, 69 S.Ct. at 221 n. 17, 223. In the application of this balancing test, the trial judge is universally recognized as exercising "wide discretion,"[5] which is nevertheless "accompanied by heavy responsibility ... to protect the practice from any misuse."[6] *Michelson*, 335 U.S. at 480, 69 S.Ct. at 221. This allocation of "wide discretion" to the trial judge naturally brings into play the corollary principle that his rulings in this area are to be reversed only when he has abused that discretion.

Of course, we presume that the trial judge has done what the law commands him to do. That includes the presumption, in the absence of evidence to the contrary, that the trial judge has applied Rule 403's balancing test before overruling an objection based on that rule. In the case at bar, the trial defense counsel invoked Rule 403 twice during the litigation of his objections to the question. While the trial judge did not explicitly state that he was applying that test, the record reflects that he was both careful and knowledgeable in his disposition of the defense counsel's objections. We find no rational basis to doubt that the

trial judge applied Rule 403. This brings us to whether the trial judge abused his discretion when he implicitly found that the prejudicial impact of the question did not substantially outweigh its probative value.

■ In assessing the prejudicial impact, we discount the effectiveness of the mandatory cautionary instruction, following the lead of the United States Supreme Court[7] and the United States Court of Appeals for the District of Columbia Circuit,[8] and we hold that trial judges must do likewise when applying Rule 403 to "Have you heard?" or "Do you know?" questions. This means that the likelihood that the members accepted as fact whatever misconduct such questions suggest must be assessed without reference to the existence of the mandatory limiting instruction.

This does not mean that the mandatory limiting instruction is any less mandatory or that we are altering the balance which the law has struck. We agree with Justice Jackson that piecemeal alterations of the law in this area are likely to do more harm than good. *Michelson*, 335 U.S. at 485–487, 69 S.Ct. at 223–224.[9] The point is that Rule 403 is an integral part of the system the law has devised to govern this area of trial practice, just as its common-law predecessor was at the time *Michelson* was decided. *Michelson* held that the inefficacy of limiting instructions was not a sound basis for outlawing "Have you heard?" questions altogether; it did *not* hold that the existence of a limiting instruction canceled the responsibility of the trial judge to exercise his discretion or that a limiting

---

5. *See, e.g., United States v. Edwards*, 549 F.2d 362, 367 (5th Cir.), *cert. denied sub nom. Matassini v. United States*, 434 U.S. 828, 98 S.Ct. 107, 54 L.Ed.2d 87 (1977); *United States v. Midkiff*, 15 M.J. at 1047–1048; Drafter's Analysis, Military Rule of Evidence 403.

6. We strongly commend the opinions in *Awkard* and *Midkiff* to trial judges for their discussions of the pitfalls which can prevent the proper discharge of this responsibility.

7. *Michelson*, 335 U.S. at 484–485, 69 S.Ct. at 222–223.

8. *Awkard*, 352 F.2d at 641, 645–646.

9. We also agree, however, with the suggestion in *Awkard*, 352 F.2d at 646 n. 13, that the Supreme Court has retreated from its former reliance on the efficacy of cautionary instructions. *See also Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

instruction could override the laws of human nature.

In accordance with what we have just said, our assessment of the prejudicial impact of the question in the case at bar begins with the assumption that the members were unable to avoid *considering* the prior offenses suggested by the trial counsel's question during their deliberations on findings. If they concluded that he was guilty of the theft for which he had been investigated, that conclusion would obviously have some prejudicial effect; appellant was charged with larceny and evidence that he had been a thief in the past would clearly tend to persuade the members that he had done it again. Nevertheless, the trial counsel's question made it plain that appellant had only been a suspect. On balance, we are satisfied that, under the circumstances of this case, it is unlikely that the question caused the members to conclude that appellant had in fact committed the offense mentioned in the trial counsel's question.[10] On the probative value side of the scale, appellant's character for honesty had been introduced and undoubtedly had influenced the members in appellant's favor, and the trial counsel's question was a meaningful factor for the members to consider in determining the weight which that character evidence should be given. Considering all of these factors, we cannot say that the trial judge abused his discretion by allowing the trial counsel's question.

Appellant's remaining assignment of error and the matters personally submitted by appellant have been considered and found to be without merit.

The findings of guilty and the sentence are affirmed.

Judge FELDER and Judge NAUGHTON concur.

---

10. Of course, if it appeared likely that they had, our inquiry (and the trial judge's) would not be over, since Rule 403 requires that the prejudicial effect be balanced against probative value and provides for exclusion only if the former substantially outweighs the latter.