UNITED STATES

v.

First Lieutenant Gilbert J. KITCHING, 458–23–1205 FV, United States Air Force.

ACM 25290.

U.S. Air Force Court of Military Review.

Sentence Adjudged 19 Dec. 1985.

Decided 14 Oct. 1986.

Appellate Counsel for the Appellant: Mr. Barry P. King, Los Angeles, California. Colonel Leo L. Sergi and Captain Charles L. Wille.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert and Captain Marc Van Nuys.

Before SESSOMS, STEWART and LEWIS, Appellate Military Judges.

## DECISION

LEWIS, Judge:

Appellant pleaded guilty to wrongful use of marijuana on divers occasions and wrongful possession of marijuana. Issues arising during the sentencing portion of the trial and in the post-trial process have formed the basis for three assignments of error, stated in the following question formats:

### I

DID THE TRIAL COUNSEL IMPROPERLY CROSS-EXAMINE A DEFENSE CHARACTER WITNESS WITH SUGGESTIVE QUESTIONS ALLEGING SERIOUS UNCHARGED MISCONDUCT ON THE PART OF THE APPELLANT?

### II

DID TRIAL COUNSEL'S REQUEST FOR AN ADDITIONAL INSTRUCTION, MADE IN THE PRESENCE OF THE PANEL MEMBERS, PREJUDICE THE SUBSTANTIAL RIGHTS OF THE APPELLANT?

### III

DID THE CONVENING AUTHORITY APPROVE FORFEITURES IN EXCESS OF THE ADJUDGED SENTENCE?

Based upon our analysis of the first and second issues, we find it necessary to reassess the sentence in this case.

We deal first with the third issue concerning the convening authority's approval of the sentence. Although this issue becomes moot by reason of our action on reassessment, we nonetheless believe it merits discussion.

Appellant was sentenced by members at trial "to forfeit all of your pay per month for seven months, to be confined for seven months, and to be dismissed from the service." By action of 8 April 1986, the convening authority approved the sentence as adjudged. The confusion as to what sentence was actually approved arises because of an error in the general court-martial order which announced this action. The order erroneously reported the adjudged sentence as including "total forfeiture of all pay and allowances." This misrepresented the adjudged forfeiture in two respects. The time limitation of seven months for the forfeiture was not reflected. Additionally, the order did not properly indicate that the forfeiture was adjudged against pay only, not allowances.[1]

There is no evidence in the record that the convening authority was misled as to the nature of the sentence he was acting upon. To the contrary, the staff judge advocate's post-trial recommendations advised him correctly in this regard. R.C.M. 1106(d)(3)(A). It is axiomatic, in any event, that a convening authority may not increase the severity of an adjudged sentence. Article 60, U.C.M.J.; R.C.M. 1107(d)(1). Based on our review of the entire record, it is clear that he neither did so nor purported to do so in this case.

We turn now to the first two assigned errors, which are related. Several witnesses testified on appellant's behalf during the sentencing phase of the trial. One of these was Mr. Harold Reid, Chief, Engineering Design Section, at George Air Force Base. He served as appellant's direct supervisor for the period of approximately three years prior to the trial. The general thrust of his testimony on direct examination was that

1. Although a sentence to total forfeiture of pay only is highly unusual, it is not precluded by the Manual for Courts-Martial, 1984, based on a literal reading of R.C.M. 1003(b)(2).

the appellant was an outgoing, friendly person who displayed fine technical capabilities. Mr. Reid described appellant as possessing a high degree of self-initiative. He stated that appellant's fine performance had continued up to the time of trial, notwithstanding the intense concerns he was presumably experiencing. The witness believed that appellant rated in the top 20 to 25 percent of lieutenants with whom he'd been associated. In response to a query by defense counsel, he indicated that he would have no "qualms" in hiring appellant for a civilian position in his section. Such a position was vacant at the time of trial.

Following the direct examination of the witness, trial counsel asked for an Article 39(a), U.C.M.J., session. During the course of this session, trial counsel sought a ruling from the military judge as to several acts of uncharged misconduct by the appellant to be used in cross-examination. None of these incidents, to this point, had been placed before the members. The trial counsel's stated purpose for questioning Mr. Reid concerning his knowledge of the matters was to determine if the witness would change his opinion about hiring appellant for the vacant civilian position. Three of the matters trial counsel sought to cover in his cross-examination were described by him in the following terms:

> The uncharged misconduct includes ... statements—or not statements—that the accused received a Letter of Reprimand in May of 1983 for dishonorable behavior,[2] that in the summer of 1983, July I think it was, the accused assaulted a female NCO by ripping her blouse off at a softball game, [and] that the accused was sleeping with the wife of a noncommissioned officer.

The military judge asked trial counsel if he had a good faith basis for posing questions concerning these matters to the witness. Trial counsel responded that the letter of reprimand was in a file in the possession of the appellant's squadron command-

er. The other two incidents were referred to in a memorandum by the appellant's former commander. This memorandum, trial counsel stated, was in the same file. The military judge ruled that he could cross-examine the witness as to his knowledge of the three matters indicated and one other not pertinent to our analysis. As to the three matters in question defense counsel posed no objection.

■ Although trial counsel did not specifically state a legal basis for injecting the references to uncharged misconduct into the trial, the dialogue between the parties clearly points to Mil.R.Evid. 405(a). This section provides for "inquiry ... into relevant specific instances of conduct" during cross-examination of character witnesses. It has long been recognized that references to such instances must be predicated upon a good faith basis for believing that they actually occurred. *Michelson v. United States*, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948); *United States v. Donnelly*, 13 M.J. 79 (C.M.A.1982). *See* S. Saltzburg, L. Schinasi, D. Schleuter, *Military Rules of Evidence Manual*, Second Edition (1986), p. 382 [hereinafter cited as *Military Rules of Evidence Manual*]. We do not reach by our decision the issue of whether the trial counsel provided an adequate showing of a good faith belief that the acts occurred. We do observe, however, that it would have been better practice for the military judge to ask to review the documentation. As it is described by trial counsel, it could apparently have been obtained for review without undue delay in the trial proceeding.

During his preliminary cross-examination of Mr. Reid, trial counsel queried the witness as to the extent of his knowledge of the appellant's marijuana involvement. The following pertinent portions of the subsequent cross-examination are quoted verbatim from the record:

---

2. The record reveals that the letter of reprimand was not part of an unfavorable information file. Thus it had not previously been offered by trial counsel as part of appellant's military records

pursuant to R.C.M. 1001(a)(1)(A)(ii). *See* Air Force Regulation 111–1, *Military Justice Guide*, 1 August 1984, para. 5–4.

Q Now, you offered an opinion that you'd hire him for a job.

A Yes, sir.

Q And you'd hire him without inquiring into those areas?

A Sir, we, in the civilian procedure, the personnel office qualifies people and we are required to pick on the basis of professional qualifications. We are not allowed to question any applicant about this type of matter. We're not allowed to even ask him if he's married.

Q Well, assuming that you could inquire into those matters, you'd hire him anyway?

A Yes, sir, I would.

Q What is it you'd like to know about a person before you hire him?

A We review his professional background.

Q What would you personally like to know about a person before you hired him to work for you personally?

A Okay, I would like to know if he's a conscientious worker and he's a good performer, he gets to work on time, he's basically a top performer.

Q Gets along with others?

A Gets along with others, yes, sir.

Q Do you know anything about the accused's misconduct in the past?

A Misconduct?

\*    \*    \*    \*    \*    \*

Q Did you know the accused got a Letter of Reprimand in May of 1983 for dishonorable behavior?

A No, sir, I'm not aware of that.

Q Would that make any difference to you in your opinion as to whether you'd hire him or not?

A Well, I would have to know the contents of the letter but ...

Q But you'd want to know that before you made your decision?

A Well, I'm always interested in the background of people, but we cannot ... On a standard application, you don't get much of an individual's behavior outside of the office. And if I

nonselected someone on the basis of just because I knew something negative about them, that person could file a grievance.

Q That's something that you're saying that you couldn't take into consideration as a person who was going to be hiring?

A That's right, sir. I am not allowed to consider those matters.

Q But if a person, such as this board [sic], for instance, was permitted to hear those matters and consider them, do you think it would be appropriate for them to consider those matters?

DC Objection, Your Honor. I'm not quite sure I understand where this questioning is going to. Are they talking about what the members can consider in making a decision here or if the members had to make the hiring decision? That was very unclear from the question.

TC I'll withdraw the question, Your Honor, and ask another question.

Q You indicated that it would be important to know how the accused got along with other people that he worked with.

A Yes, sir.

Q Did you know that the accused assaulted an NCO at a softball game and tore her blouse off?

A No, sir. I'm not aware of that.

Q Did you know that he was sleeping with the wife of an NCO?

A No, sir. I'm not aware of that.

■ Trial counsel accomplished two things through this line of questioning, both of which were presumably unintended. First, he effectively rebutted any inference that might have been drawn through the direct examination of Mr. Reid that the witness was purporting to offer a positive character assessment of appellant. *Cf. United States v. Strong*, 17 M.J. 263 (C.M.A.1984). While this was probably a useful result from the prosecution viewpoint, the second clear result of his questioning was not. He undermined the basis

for posing the three "did you know" questions. Mil.R.Evid. 405(a) allows cross-examination of character witnesses as to "*relevant* specific instances of conduct." [Emphasis added]. A fair reading of the cross-examination of the witness can only lead one to conclude that Mr. Reid was not offering his opinion as to the appellant's sterling traits of character in general, but, more narrowly, the fine manner in which he performed in a job-related environment. More precisely, the witness' willingness to hire appellant to a civilian position was based on his professional qualifications and proficiency, not on any assessment of his "whole man" qualities. Mr. Reid avowed, in effect, that these considerations would not and could not be deemed "relevant" in a determination by him to hire a given individual.

We conclude that the suggestion of three instances of misconduct imparted to the members was well beyond the point of a Mil.R.Evid. 403 balancing of probative value versus potential prejudicial impact by the time the questions were asked. Whatever probative value the questions might have had when the military judge initially ruled had totally diminished. All that remained was potential prejudice. It was error for the military judge to allow the "did you know" cross-examination questions. *United States v. Nixon*, 15 M.J. 1028 (A.C.M.R.1983), *pet. denied*, 17 M.J. 183 (1983).

Appellate government counsel argues that the "did you know" questions became relevant when the witness stated that it would be important for him to know if a potential employee "gets along with others." We observe first that this attribute was suggested, not directly by the witness, but by a question of trial counsel. More importantly, a review of the overall tenor of Mr. Reid's testimony clearly indicates that this particular response was no more in the nature of a comment on general character than other responses by the witness. When Mr. Reid agreed that getting along with others was a factor he would consider in hiring an individual, he was clearly speaking in a job-related context.

He was not offering the view that a potential employee should enjoy harmonious relations off the job. In any event, it is not appropriate that we engage in speculation at this point as to how the trial counsel might have secured a relevant cross-examination with what was available on the record. As was noted in *United States v. Rener*, 17 U.S.C.M.A. 65, 37 C.M.R. 329, 334 (1967): "A trial becomes unfair if evidence accepted for one purpose may be used by an appellate court as though admitted for a different purpose, unavowed and unsuspected."

■ Defense counsel did not make a timely objection to the "did you know" questions either during the Article 39(a), U.C.M.J., session or before the members. Not every improper use of such suggestive questions gives rise to prejudicial error, e.g., *United States v. Nixon, supra.*, (information suggested in cross-examination was already properly before the members for another purpose). We must determine whether defense counsel's failure to object in this case served as a waiver of error. Mil.R.Evid. 103(a). For reasons stated below we conclude that there was no waiver of error in this case.

Our review of the second error assigned by appellant leads us to conclude that the prejudicial impact of trial counsel's questions was further aggravated by subsequent trial events. During his closing argument on sentencing defense counsel reminded the members that the "did you know" queries to Mr. Reid had been merely questions and that no proof of other acts of misconduct by appellant had been placed before them. Following sentencing instructions, the military judge inquired whether either counsel had objections to instructions given or requests for additional instructions. The following is reflected in the record of trial at this point:

TC  I have no objections, Your Honor. I would request an instruction with regards to the argument of defense counsel as it referred to questions asked by me to Mr. Reid and un-

charged misconduct mentioned by me. The implication is that there was some failing on the part of the prosecutor in not presenting additional evidence. The defense counsel knows full well that we're prohibited from doing that. I'd like the court members instructed if there's some confusion about that.

MJ   Any comment?

DC   Yes, sir. I think it would be appropriate to address that in the 39(a) session.

During the subsequent Article 39(a) session, the substance of a possible instruction was discussed by the parties, however no instruction was given to members at any point in the trial, either before or after the trial counsel's comments, as set forth above. Defense counsel neither actively sought an instruction nor did he object that a limiting instruction was not provided.

A limiting instruction on the proper consideration of uncharged misconduct suggested by "do you know" or "have you heard" questions during cross-examination of character witnesses has been strongly encouraged. *Michelson v. United States, supra; Awkard v. United States*, 352 F.2d 641 (D.C.Cir.1965); *United States v. Midkiff*, 15 M.J. 1043 (N.M.C.M.R.1983), *pet. denied*, 17 M.J. 89 (1983); *Military Rules of Evidence Manual, supra*, p. 382. The Army Court of Military Review apparently regards a limiting instruction in such instances as "mandatory." *United States v. Pearce*, 21 M.J. 991 (A.C.M.R.1986). *Compare, United States v. Thomas*, 11 M.J. 388 (C.M.A.1981) (limiting instruction is not necessarily required where uncharged misconduct is received pursuant to Mil.R.Evid. 404(b)).

■ In this case, not only did the members not receive a limiting instruction from the military judge, they received a suggestion in the form of a request for an instruction by trial counsel that mere legal technicalities precluded him from bringing evidence of appellant's other acts of misconduct before them. Two observations can be made. First, the military judge is the sole party charged with the responsibility for instructing members on the law.

R.C.M. 801(a)(5). The opportunity for error is enhanced if counsel are permitted to argue or discuss proposed instructions before the members. Secondly, while the trial counsel's observation was not legally incorrect, it was an improper one to be made before the members. It served unduly to highlight the suggestions inherent in the cross-examination of Mr. Reid that the appellant had a history of unsavory personal behavior.

We have examined the improper cross-examination, combined with the request by trial counsel for an instruction before the members and the lack of a limiting instruction, to determine whether prejudicial error occurred despite defense counsel's failures to object in a timely manner. Mil.R.Evid. 103(a); R.C.M. 920(f). We conclude that prejudicial error did occur in this case. The members received suggestions of incidents of misconduct not related to the offenses for which appellant was to be sentenced. The suggestions, as noted earlier, were not placed before them in the course of relevant cross-examination. The suggestions were reinforced by trial counsel's request for an instruction. No attempt was made by the military judge to alleviate the impact of the suggestions by instructing the members that the questions were posed for the limited purpose of testing the witness' opinion and credibility and could not be considered as evidence that any such acts as suggested had occurred. *United States v. Midkiff, supra.* The members carried the reinforced suggestions into sentencing deliberations. While we stop short of establishing a rule that a limiting instruction must always be given when Mil.R.Evid. 405(a) cross-examination is conducted, such an instruction was appropriate and necessary in this case. In its absence, appellant suffered no less than a gratuitous character assassination.

In assessing prejudice to appellant, we are mindful that one of the appellant's own witnesses had previously disclosed that the appellant had been placed in an alcohol rehabilitation program in 1983, following "some alcohol incidents." It is conceivable, of course, that the members might have assumed that the "did you know" questions

related to these previously undescribed incidents. We are unable to determine from the record of trial whether that would have been a valid assumption. The record does not disclose a relationship. Thus, we have no basis for determining that the prior reference to alcohol incidents served either to avert or to limit prejudice to the appellant in this case.

We reassess the sentence in light of our finding of prejudicial error and approve only so much as provides for dismissal. We consider the sentence as modified appropriate and are convinced that it is no greater than would have been adjudged had the prejudicial error not occurred. *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986).

We have examined the record of trial, the assignment of errors and the government's reply thereto and have concluded that the findings and the modified sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the accused was committed except as previously noted.

Accordingly, the findings of guilty and the sentence, as modified, are

AFFIRMED.

Senior Judge SESSOMS and Judge STEWART concur.