**UNITED STATES**

**v.**

**Sergeant Christopher JOYNER, FR 174–56–6655, United States Air Force.**

**ACM S27499.**

U.S. Air Force Court of Military Review.

Sentenced Adjudged 21 Nov. 1986.

Decided 11 Dec. 1987.

Appellate Counsel for the Appellant: Colonel Leo L. Sergi and Major Charles L. Wille.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni and Captain Marc Van Nuys.

Before SESSOMS, LEWIS and BLOMMERS, Appellate Military Judges.

## DECISION

PER CURIAM:

The appellant was convicted of wrongfully using marijuana on two occasions. For the purpose of our discussion, the facts are not in dispute.

In March 1986, the appellant was chosen at random to participate in a urinalysis inspection which disclosed the presence of tetrahydrocannabinol (commonly referred to as "THC", an active ingredient of marijuana) in his urine, as confirmed by gas chromatography/mass spectrometry (GC/MS) analysis, at a sufficient level to be reported as positive under the Air Force drug testing program (at least 20 nanograms per milliliter (ng/ml)). In mid-April 1986, when the test results were returned, the appellant was called before his commander and confronted with this fact. He volunteered to take another test. The second test also came back positive. These two test results formed the basis for the charges in this case.

During presentation of the defense case, the appellant was called as a witness and testified under oath. He emphatically denied that he had ever used marijuana. He also confirmed that he volunteered to take a second urinalysis test after the first one was reported as positive. He believed "that it should come back negative." On cross-examination the following exchange occurred:

Q. One moment. Sergeant Joyner, isn't it a fact that the reason that you asked for another urine test on the 17th of April (sic) that you had given a urine sample approximately a year earlier and it had come up negative on that test?

A. That's true, sir.

Q. That you had given a sample on the 16th of April, 1985, hadn't you?

A. Sir, I don't recall the exact date but it was in that time frame.

. . . .

Q. And yet you had used marijuana prior to giving that urine specimen on the 16th of April, hadn't you?

A. Not to my recollection, sir.

In rebuttal, the Government offered the test results on the sample taken in April 1985. That test was reported as negative, but GC/MS analysis confirmed the presence of the THC metabolite in the specimen at a concentration of 14 ng/ml, 6 ng/ml below the level required for a positive report. The military judge, over defense objection, admitted this evidence. It is now contended this was error.

The military judge found this evidence admissible on two grounds. First, under Military Rule of Evidence 608(c) as reflecting a possible motive to misrepresent on the appellant's part, i.e., that, based on his prior experience, he volunteered to submit to a second test because he had reason to believe that the result would be negative even though he knew that he had used marijuana. And second, that specific instances of misconduct such as this could be introduced as an attack on the accused's credibility as a witness "because the accused specifically denied, during direct testimony, any prior use of marijuana." In making his ruling, the military judge applied the balancing test in Military Rule of Evidence 403. We believe that, under the circumstance present in this case, either ground could serve as a basis for admission of such evidence. *See* S. Saltzburg, L. Schinasi & D. Schlueter, *Military Rules of Evidence Manual,* 519 (2d Ed.1986); *Unit-*

*ed States v. Garcia–Garcia*, 25 M.J. 652 (A.F.C.M.R.1987), and cases cited therein.

However, a question remains, because in the original state of its admission, the evidence indicated a concentration below that which military directives would permit being reported as positive for the presence of the THC metabolite. *See* Air Force Regulation (A.F.R.) 160–23, Drug Abuse Testing Program, para. 6 (31 July 1986); Ass't Secretary of Defense (Health Affairs) Memorandum, Subj: "Transportation of Specimens and Drug Urinalysis Testing and Retesting Levels," dated 23 April 1985 (set level for positive report of THC metabolite at 20 ng/ml or above). After ruling that evidence of the test results on the April 1985 sample would be admitted, the military judge granted a defense request for a continuance until such time as complete documentation regarding the testing of that sample could be obtained. Mil.R.Evid. 106. When the trial resumed, that documentation was presented to the court, and the Government's expert witness was recalled to testify about the analysis and test results. He noted that the lab had neglected to take into account a difference in volume of urine used when testing the appellant's sample (3 milliliters) as compared to the control samples (5 milliliters) run through GC/MS analysis. Making the appropriate arithmetic adjustment, the appellant's sample had a concentration of 23.3 ng/ml of the THC metabolite, and should have been reported as positive. This testimony is not in dispute. Thus, the appellant's sample in fact exceeded the prescribed cutoff level of 20 ng/ml. Cast in this light, we find this evidence was properly considered by the trial court.

We need not decide whether urinalysis test results which are in fact below prescribed cutoff levels would be admissible if offered under circumstances similar to the case *sub judice. Cf. United States v. Johnson*, 20 M.J. 610 (A.F.C.M.R.1985). We are mindful, however, that there are valid reasons behind the policy decision within the Department of Defense to establish cutoff levels for reporting the presence of controlled substances through urinalysis testing, as acknowledged by the forensic toxicology experts who testified in this case. When dealing with very small quantities or trace amounts of such drugs, the possibility that their presence in bodily fluids could be the result of noncriminal activity increases, while the ability to insure that adequate quality assurance standards are maintained decreases.

We find the two other errors asserted to be likewise without merit. *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *United States v. Harper*, 22 M.J. 157 (C.M.A.1986); *United States v. Felix*, 25 M.J. 509 (A.F.C.M.R. 1987); *United States v. Hudson*, 20 M.J. 607 (A.F.C.M.R.1985); *United States v. Cleveland*, 6 M.J. 939 (A.C.M.R.1979).

Having examined the record of trial, the assignment of errors and the government's reply thereto, we have concluded that the findings and sentence are correct in law and fact and that no error prejudicial to the substantial rights of the accused was committed. Accordingly, the findings of guilty and the sentence are

AFFIRMED.