**UNITED STATES**

v.

**Technical Sergeant Robert E. SUTTON, FR 246–92–8608 UNITED STATES AIR FORCE.**

**ACM 26876.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 10 Feb. 1988.

Decided 7 Oct. 1988.

Appellate Counsel for the Appellant: Colonel Leo L. Sergi, Lieutenant Colonel Richard F. O'Hair and Captain Paul M. Dankovich.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni and Captain Marc Van Nuys.

Before LEWIS, MICHALSKI and BLOMMERS, Appellate Military Judges.

### DECISION

LEWIS, Senior Judge:

Despite his plea of not guilty the appellant stands convicted by a panel of members of the wrongful use of cocaine. The government's proof of ingestion consisted of the result of a urinalysis pursuant to a unit inspection. Mil.R.Evid. 313. The sentence, as adjudged and approved, consists of a bad conduct discharge, confinement for six months, forfeiture of $200.00 per month for six months and reduction to airman first class.

In the course of our review of this record we specified issues relating to an unsuccessful motion *in limine* by the trial defense counsel. By this motion the defense attempted to preclude the prosecution from introducing evidence of a second urinalysis result as further evidence of cocaine use by the appellant. The motion related to a urinalysis conducted by command direction a month after the unit inspection. The specific nature of the urinalysis information that the defense was attempting to keep from the members was a negative screening by the radioimmunoassay (RIA) method, and a "negative" negative at that. *Cf. United States v. Joyner*, 25 M.J. 730 (A.F.C.M.R.1987), which we will discuss *infra*. The fact that the prosecution contemplated introducing such data as affirmative circumstantial evidence of use might cause some persons having a degree of familiarity with the drug testing program to sit up with a start. Nevertheless, the military judge was satisfied from the testimony of a government expert witness, heard during an Article 39(a), UCMJ, session, that the test data reflected evidence of some degree of cocaine metabolite activity. The government expert's testimony did not stand uncontested. A defense expert disputed the view that the negative RIA data could be construed as a reliable indication of cocaine use.

The question of the admissibility of the RIA result was raised at several points during the trial. The military judge's key ruling, for the purpose of our focus, came at the conclusion of the prosecution case in chief. The defense counsel sought a ruling on whether the anticipated defense evidence would "open the door" for the government to either admit or make reference to the test data in cross-examination. The military judge determined that the RIA data, as interpreted by the government expert, had sufficient scientific validity for consideration by the members as evidence of uncharged drug use by the appellant, if otherwise relevant. Mil.R. Evid. 401, 403, 404(b). He relied upon the principles enunciated in *United States v. Abeyta*, 25 M.J. 97 (C.M.A.1987) and *United States v. Gipson*, 24 M.J. 246 (C.M.A.

1987), relating to receipt of polygraph evidence. The military judge determined further than the RIA information would have relevance in two areas. First, it might be introduced, along with appropriate explanatory testimony presumably, to rebut testimony by the appellant to the effect that he had never used cocaine. Secondly, it might be used in a less direct manner. The fact of the test might be framed in "Did you know?" questions posed to prospective defense character witnesses. Mil.R.Evid. 405(a). *United States v. Kitching*, 23 M.J. 601 (A.F.C.M.R.1986), *pet. denied*, 24 M.J. 441 (1987), and cases cited therein.

Following the military judge's ruling the trial defense counsel stated, "Based on the court's ruling, TSgt Sutton has elected not to testify. The defense has decided to present no character witnesses, and the defense has decided not to present the APRs [Airman Performance Reports]. When the court members return, the defense will rest." As indicated by this statement, the defense presented no evidence. As a consequence the members received no information whatsoever concerning the RIA result.

A brief overview of our past decisions relating to negative urinalyses is in order. In *United States v. Johnson*, 20 M.J. 610 (A.F.C.M.R.1985), we considered a negative urinalysis proffered as defense evidence for its tendency to show that the accused had not wrongfully used marijuana at divers times as charged. Therein, we held that the evidence, which related to the period of time covered by the specification in question, was relevant and that the military judge abused his discretion in excluding it. In recognition that a negative result does not necessarily mean that scientific indications of drug ingestion are totally lacking, we noted that "the prosecution would be entitled to rebut any false impression created by the evidence." 20 M.J. at 612. *Cf. United States v. Farrar*, 25 M.J. 856 (A.F.C.M.R.1988), wherein we held that the defense offer of a negative urinalysis was properly denied on the basis of relevance because it was not sufficiently related to the time of the alleged offense.

More recently we have dealt with negative urinalyses offered by the government as affirmative evidence of drug usage. In *United States v. Joyner, supra,* we upheld a ruling permitting consideration of a purportedly negative urinalysis offered by the prosecution to rebut the accused's denial that he had ever used marijuana. *Joyner* must be read within the context of its facts. The urinalysis result pertained to a confirmation test conducted by the gas chromatography/mass spectrometry method, generally recognized as a more accurate identifier of the presence of a specific metabolite than the RIA screening. Secondly, in *Joyner,* the government expert testified that an error had been made by laboratory personnel in evaluating the test data and that they should have reported the result as positive. We voiced the following caution concerning future issues arising over the admissibility of "negative" test results: "When dealing with very small quantities or trace amounts of such drugs, the possibility that their presence in bodily fluids could be the result of noncriminal activity increases, while the ability to insure that adequate quality assurance standards are maintained decreases." 25 M.J. at 732.

In *United States v. Lukus,* 26 M.J. 903 (A.F.C.M.R.1988), the accused had testified that she had received a negative test result on urine furnished just the day before she provided urine that was subsequently tested as positive. We upheld the military judge's ruling permitting the prosecution to produce data relative to the earlier negative test, an RIA screening as in this case, and to explore its implications. In so doing, we noted that the accused had clearly "opened the door" to this evidence by her initial testimonial reference to the negative result. *Lukus* is another case which must be carefully examined within the context of its facts.

▮ Prior to accepting evidence of a negative urinalysis to support a contention that it has a tendency to prove drug ingestion a military judge should insure that the record demonstrates a valid scientific basis for such consideration. We have no doubt that the military judge in this instance heard both sides of a difficult scientific issue and was in the position to make an informed ruling. The correctness of his ruling in the light of this conflicting scientific testimony was, nonetheless, at the center of our thoughts when we specified issues to appellate counsel. Based on our review of past cases we view the proffer of negative urinalysis information by the prosecution in this case as representing a quantum leap beyond what has been permitted before. Although we had contemplated addressing this matter substantively, we have determined that it is not appropriate to do so. We are persuaded by the response of appellate government counsel that we do not have an issue of admissibility preserved for appellate review in this case.

Given the posture of the case below, we have an adequate basis for reviewing the correctness of the military judge's ruling on the motion *in limine.* That is not a problem. However, in the event we should find error, we have no basis for determining whether or not the ruling had a prejudicial effect. The defense, as previously noted, did not present evidence. We are left to rely upon a general defense proffer that the appellant would testify and deny cocaine involvement and that certain witnesses attesting to his good character would be called.

The Supreme Court's discussion of an analogous trial scenario in *Luce v. United States,* 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed. 2d 443 (1984), suggests that we do not have an adequate basis to attempt to evaluate the impact of the urinalysis evidence if it had come before the triers of fact. As Chief Justice Burger stated therein: "A reviewing court is handicapped in any effort to rule on subtle evidentiary questions outside a factual context." 469 U.S. at 41, 105 S.Ct. at 463. In *Luce,* the defendant's counsel had unsuccessfully moved to preclude the prosecution from impeaching his client with a prior conviction in the event he provided testimony in his own behalf. In the face of the adverse ruling the defendant, as the appellant in this case, opted not to testify. Under these circumstances,

the Court, having discussed the numerous factors which may influence a decision as to whether a criminal accused will testify or not, concluded that any possible harm flowing from the ruling was "wholly speculative." *Id.* at 41, 105 S.Ct. at 463. Such issues cannot be resolved in an evidentiary vacuum, as Justice Burger's cited language indicates.

Two questions we address briefly are whether the *Luce* rule is applicable in military law and whether it is applicable in the context of proffered defense character testimony which is not actually called as opposed to the proffered testimony of an accused.* *Luce* does appear to represent a departure from prior military practice as discussed by the Court of Military Appeals in describing how issues such as those raised by the appellant's motion *in limine* are preserved. *See United States v. Cofield*, 11 M.J. 422, 431 (C.M.A.1981). We note, however, that *Luce* has subsequently been cited favorably by that Court. *United States v. Welch*, 25 M.J. 23, 26 (C.M.A. 1987). This suggests to us that the Court of Military Appeals accepts, at least in principle, the validity of the rule announced therein.

The *Luce* rule, in its insistence that a full evidentiary record be created, makes sense in situations extending beyond potential testimony by an accused. As to the issue of Mil.R.Evid. 405(b) cross-examination of character witnesses, for example, the record tells us little that we need to know to enable us to review the impact of the military judge's ruling. We do not know from the record what the scope of the testimony would have been and what specific traits of character would have been discussed. More importantly, without having a full evidentiary record to review we can do little more than speculate as to how the witnesses would have responded to the cross-examination, had it been posed.

In summary, we accept *Luce* as being a valid expression of the current state of the law. For the reasons set forth above, we conclude that no reviewable issue with re-

spect to the military judge's ruling on the motion *in limine* is before us.

Turning briefly to another point, we also note that the military judge's instructions on findings appear to satisfy the standard recently enunciated in *United States v. Mance*, 26 M.J. 244 (C.M.A.1988). *Cf. United States v. Brown*, 26 M.J. 266 (C.M. A.1988). The findings of guilty and sentence are correct in law and fact and, on the basis of the entire record, are

AFFIRMED.

Judge MICHALSKI concurs.

BLOMMERS, Judge (dissenting):

The manner in which we have chosen to resolve the issue of the potential use of "negative" urinalysis test results as rebuttal evidence in this case causes me great concern. I view the resolution of this issue as an equation having two distinct parts. First, is there a valid legal basis for use of the proffered rebuttal evidence under any circumstances in the case at hand? Mil.R. Evid. 401, 402. And second, if so, then when does the evidence become admissible? *See e.g.,* Mil.R.Evid. 403, 404, 405, and 608. Senior Judge Lewis by-passes the first part of this equation and then relies (quite correctly) upon a waiver rule announced by the Supreme Court in *Luce v. United States,* 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed. 2d 443 (1984) to resolve the issue. However, I believe that the first part of the equation must be addressed before reaching the second part.

I believe there is no doubt but that an accused person's rights to testify and present other evidence on his or her behalf are fundamental and substantial trial rights. If there is a valid basis for use of impeachment or rebuttal evidence as a trial unfolds, and for tactical reasons the accused decides to waive those rights in order to keep such evidence from coming before the court, then so be it. *Id.* If there is *no* valid basis for the introduction of such evidence, then a rule that forces an accused to consider giving up those rights in light thereof offends my sense of justice.

---

* See Justice Brennan's concurring opinion in support of a limited application of the majority

holding. 469 U.S. at 43–44, 105 S.Ct. at 464.

The question of the validity or scientific basis for use of the "negative" urinalysis test results in this case was fully developed and litigated at trial. We have a complete record in that regard. Therefore, the concerns expressed by the Supreme Court in *Luce* are not present. I would hold that the military judge's determination that the test data reflected evidence of some degree of cocaine activity is a matter preserved for appellate review and would test that ruling for abuse of discretion. *United States v. Cofield*, 11 M.J. 422 (C.M.A.1981); [1] *United States v. Johnson*, 20 M.J. 610 (A.F.C.M.R. 1985). If abuse of discretion is found, then the question is whether or not "the error materially prejudices the substantial rights of the accused." Article 59(a), UCMJ, 10 U.S.C. § 859(a). *See also* Mil.R.Evid. 103(d).

I do not believe this approach would be inconsistent with the holding in *Luce*. There is nothing in that opinion that would lead me to conclude other than that the evidence the Government possessed was a properly documented prior conviction which fully met the procedural requirements for admissibility under Federal Rule of Evidence 609, assuming the defendant took the stand and "opened the door." Thus, the first part of the equation had already been satisfied. The issue addressed by the Court in *Luce* involved the second part.

Assuming a clean chain of custody and a showing that proper testing procedures were followed by the laboratory, a denial of wrongful use coupled with evidence regarding truthfulness and good character is often the only defense available in drug urinalysis cases. Character evidence alone in such cases might generate reasonable doubt in a factfinder's mind. *See United*

States v. Vandelinder, 20 M.J. 41, 47 (C.M. A.1985); *United States v. Farrar*, 25 M.J. 856, 857 (A.F.C.M.R.1988). The accused in these cases are often noncommissioned officers with otherwise excellent service records stretching over a number of years (the appellant here has over sixteen years service). If found guilty, a punitive discharge will quite likely be included in the court's sentence.[2] They, as well as their families, have a lot at stake. I also note that under the DOD drug urinalysis program specimens that test negative (drug not present in a quantity at or above the prescribed cut-off level) are not preserved. Thus, there is no opportunity for retesting.[3] *Cf. United States v. Kern*, 22 M.J. 49 (C.M.A.1986); *United States v. Frost*, 19 M.J. 509 (A.F.C.M.R.1984), *aff'd* 22 M.J. 386 (C.M.A.1986). The underlying ruling that there is a valid basis for use of "negative" urinalysis test results as rebuttal evidence, in my judgment, must be subject to appellate review.

---

1. In the *Welch* case cited by Senior Judge Lewis the Court of Military Appeals' reference to *Luce* was limited to "the peculiar circumstances of this [the *Welch*] case" (25 M.J. 23, 26), and nowhere in that opinion did the Court make reference to its prior holding in *Cofield.*

2. Data from the Air Force's military justice data system (See Air Force Manual 111–651, *Automated Military Justice Analysis and Management System* (19 Dec 1980)), reveal that over the past two years almost 80% of the noncommissioned officers convicted only of wrongful use of drugs

based upon urinalysis test results had a punitive discharge included in the sentence as adjudged by the trial court.

3. In the case *sub judice*, the Government's own expert testified that he would "probably not" stake his professional reputation on his opinion that there was between 50 and 100 nanograms per milliliter of the cocaine metabolite present in the sample in question, and that even in a clinical setting radioimmunoassy tests are run two or three times.