UNITED STATES, Appellee

v.

Billy J. BELL, Private First Class
U.S. Marine Corps, Appellant.

No. 95–0281.
CMR No. 91–0956.

U.S. Court of Appeals for
the Armed Forces.

Argued Dec. 7, 1995.

Decided Sept. 5, 1996.

For Appellant: *William J. Holmes* (argued); *Major Richard K. Stutzel*, USMC (on brief); *Lieutenant Alan D. Titus*, JAGC, USNR and *Lieutenant Syed N. Ahmad*, JAGC, USNR.

For Appellee: *Lieutenant Randy S. Kravis*, JAGC, USNR (argued); *Lieutenant S.J. Coaty*, JAGC, USNR (on brief); *Colonel J. Composto*, USMC, *Commander D.H. Myers*, JAGC, USN, *Lieutenant R.W. Sardegna*, JAGC, USNR.

*Opinion of the Court*

GIERKE, Judge:

A general court-martial composed of officer and enlisted members at Camp LeJeune, North Carolina, convicted appellant, contrary

* *See* 41 MJ 213, 229 n. * (1994).

to his pleas, of conspiracy to commit robbery, robbery, perjury, false swearing, and assault with intent to commit robbery (3 specifications), in violation of Articles 81, 122, 131, and 134, Uniform Code of Military Justice, 10 USC §§ 881, 922, 931, and 934, respectively. The approved sentence provides for a dishonorable discharge, confinement and partial forfeitures for 10 years, and reduction to the lowest enlisted grade. The Court of Military Review * affirmed in an unpublished opinion.

Our Court granted review of the following issues:

I

WHETHER THE MILITARY JUDGE COMMITTED PREJUDICIAL ERROR BY ADMITTING THE TESTIMONY OF APPELLANT AT THE ARTICLE 32 INVESTIGATION OF AN ALLEGED CO-ACTOR WHEN HE WAS SPECIFICALLY SUSPECTED OF COMMITTING THE VERY SAME OFFENSES WHICH WERE BEING INVESTIGATED AND WAS INTERROGATED WITHOUT THE BENEFIT OF AN ARTICLE 31 RIGHTS' ADVISEMENT OR THE OPPORTUNITY TO CONSULT WITH COUNSEL.

II

WHETHER THE MILITARY JUDGE COMMITTED PREJUDICIAL ERROR BY RULING THAT EVIDENCE OF A SUBSEQUENT CONVICTION COULD BE USED TO IMPEACH THE FORMER TESTIMONY OF TWO DEFENSE WITNESSES WHO WERE UNAVAILABLE TO TESTIFY AT APPELLANT'S COURT–MARTIAL.

We resolve both issues against appellant.

*Facts*

On January 12, 1990, two Marines were robbed during the early morning hours. On January 17, a witness identified two Marines, Private (PVT) Miller and PVT Smith, as participants in the robbery.

Also on January 17, appellant and two Marines, Lance Corporal (LCPL) Fowler and Private First Class (PFC) Ratliff, were questioned by special agents of the Naval Investigative Service (NIS). Appellant was advised that he was suspected of aggravated assault, robbery, and conspiracy to commit assault and robbery. He waived his rights and provided an exculpatory written statement. Appellant told the interviewing agent that he, PVT Miller, PVT Smith, LCPL Fowler, and PFC Ratliff spent the entire evening together at a night club, maybe bought gasoline at a "mini market," bought food at a fast food restaurant, and returned to the base. Appellant concluded his written statement by stating: "I also wish to state at this time that I was not involved in any type of assault or robbery incident during the evening hours of the 11th of Jan 90 or the early morning hours of 12Jan90. Additionally I have no information regarding any of my friends (Smith/Ratliff/Miller/Fowler) being involved in any of the above described activities."

Miller and Smith were charged with the robberies. On February 20, 1990, appellant appeared as a defense witness at the Article 32, UCMJ, 10 USC § 832, hearing concerning the charges against Miller and Smith. At that time appellant had not been charged with any offenses and was not represented by counsel. Defense counsel asked appellant if he previously had been advised of his rights under Article 31, UCMJ, 10 USC § 831, and appellant responded affirmatively, but no one repeated the warnings. Appellant then testified consistently with his statement to the NIS, providing alibis for Miller and Smith.

Subsequently, appellant was charged with perjury at the Article 32 investigation, false swearing in his statement to the NIS, and several offenses arising from his participation in the robberies, *i.e.,* conspiracy, robbery, and assault with intent to commit robbery. At trial, defense counsel moved to suppress appellant's prior testimony from the Article 32 investigation. The military judge denied the motion to suppress, ruling that, "for all intents and purposes," appellant in effect received an Article 31 rights' warning by ac-

knowledging that he had been advised of his rights and had waived them at the NIS interview and by adopting his statement to NIS at the Article 32 investigation. The military judge also ruled that an Article 32 investigating officer was not required to give an Article 31 rights' warning. Finally, the military judge found that appellant's appearance as a defense witness was voluntary. Since appellant's testimony at the Article 32 investigation was totally exculpatory regarding the conspiracy, robberies, and assaults, the prosecution offered it only in support of the perjury charge.

### Discussion

### *Issue I: Article 31 Warnings*

Appellant argues that he was entitled to be fully advised of his rights under Article 31 and an opportunity to consult with counsel before testifying at the Article 32 investigation. The Government argues that appellant affirmatively waived his Article 31 rights.

We hold that appellant is not protected from prosecution for perjury by absence of Article 31 rights' warnings at the Article 32 investigation. *See* Mil.R.Evid. 301(b)(2), Manual for Courts–Martial, United States (1995 ed.) (failure to advise witness of privilege against self-incrimination does not make testimony inadmissible). Accordingly, we need not determine if appellant's acknowledgement, in response to defense questioning, that he previously had been advised of his rights and waived them, was sufficient to satisfy Article 31 and Mil.R.Evid. 305. *See United States v. Gillespie,* 974 F.2d 796, 800, 803–04 (7th Cir.1992) (written warning 9 days before grand jury questioning sufficient).

■■■ The Article 31 requirement for warnings does not apply at trial. *United States v. Howard,* 5 USCMA 186, 17 CMR 186 (1954). *See United States v. Valdez,* 16 F.3d 1324, 1328 (2d Cir.1994) (*Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), warning not required at trial); *United States v. Arthur,* 949 F.2d 211, 215–16 (6th Cir.1991) (court has "discretion to warn" witness, but may abuse discretion if it "actively encourages a witness not to testi-

fy or badgers a witness into remaining silent"). It was not intended by Congress to apply to judicial proceedings. *United States v. Howard, supra.* Article 31 warnings are not required where the interrogator is not acting in an official disciplinary or law enforcement capacity. *See United States v. Sullivan,* 42 MJ 360, 362, 364 (1995) (Article 31 not applicable to questioning by neighbor in "private capacity"); *United States v. Bowerman,* 39 MJ 219, 221 (CMA 1994) (questioning of parent by supervising pediatrician); *United States v. Moore,* 32 MJ 56, 60 (CMA 1991) (questioning by nurse for medical purpose); *United States v. Loukas,* 29 MJ 385, 389 (CMA 1990) (questioning by crew chief for operational rather than law enforcement or disciplinary reasons); *United States v. Duga,* 10 MJ 206, 211 (CMA 1981) (questioning motivated by friendship and personal curiosity).

■ The Article 32 investigation is a judicial proceeding, not a disciplinary or law enforcement tool within the context of Article 31. *See United States v. Collins,* 6 MJ 256, 258–59 (CMA 1979) (Article 32 investigating officer is "a judicial person" subject to American Bar Association standards for trial judges); *United States v. Samuels,* 10 USCMA 206, 212, 27 CMR 280, 286 (1959) (Article 32 investigation "is judicial in nature."). The Military Rules of Evidence treat Article 32 testimony as equivalent to trial testimony. *See* Mil.R.Evid. 801(d)(1) and 804(b)(1); Drafters Analysis of Mil.R.Evid. 801(d)(1), Manual, *supra* at A22–49 (1995 ed.).

■ The Article 32 investigation is "the military equivalent of" a grand jury. *United States v. Nickerson,* 27 MJ 30, 31–32 (CMA 1988). The Supreme Court has declined several invitations to decide "whether any Fifth Amendment warnings whatever are constitutionally required for grand jury witnesses." *United States v. Washington,* 431 U.S. 181, 186, 97 S.Ct. 1814, 1818, 52 L.Ed.2d 238 (1977). *See also United States v. Mandujano,* 425 U.S. 564, 582 n. 7, 96 S.Ct. 1768, 1779 n. 7, 48 L.Ed.2d 212 (1976); *United States v. Gillespie,* 974 F.2d at 803 (Supreme Court "disinclined" to extend warning requirements to grand jury witnesses).

In *Mandujano,* a plurality decision, the Supreme Court held that *Miranda* warnings were not required for witnesses who were not "putative defendants" or targets of investigation. 425 U.S. at 578–80, 96 S.Ct. at 1777–78. Four justices (Burger, C.J., joined by White, Powell, and Rehnquist, JJ.) stated that *Miranda* does not apply to judicial interrogations. *Id.* at 579, 96 S.Ct. at 1778. Two Justices (Brennan and Marshall) stated that warnings were required if the witness had been indicted or was a "putative defendant," defined as "one whom [the Government] has probable cause ... to suspect of committing a crime." All eight participating justices agreed that failure to warn a witness, even a "putative defendant," of the privilege against self-incrimination does not preclude prosecution for perjury. *Id.* at 582, 584–85, 609, 96 S.Ct. at 1779, 1780, 1792. *See also* E. Imwinkelried, P. Giannelli, F. Gilligan, and F. Lederer, *Courtroom Criminal Evidence* § 2513 at 860 (2d ed.1993).

Likewise, in *United States v. Wong,* 431 U.S. 174, 97 S.Ct. 1823, 52 L.Ed.2d 231 (1977), the Supreme Court unanimously held that "the Fifth Amendment privilege does not condone perjury." Accordingly, the Supreme Court held that failure to give a witness Fifth Amendment warnings does not protect that witness from subsequent prosecution for perjury. 431 U.S. at 178, 97 S.Ct. at 1825–26.

■ We cannot determine from the record whether appellant was a "putative defendant" when he testified. Nevertheless, *Mandujano, Wong,* and *Washington* make it clear that appellant is not protected from prosecution for perjury by the absence of Article 31 and *Miranda* warnings. Accordingly, we hold that the military judge did not err by admitting appellant's Article 32 testimony as proof of perjury.

### Issue II: Evidence of Convictions of Defense Witnesses

Appellant offered transcripts of the former testimony of LCPL Fowler and PFC Ratliff at their respective trials. Both Fowler and Ratliff had testified that they, along with

Miller, Smith, and Bell, spent the entire evening together and had nothing to do with the robbery of the two Marines. The Government did not object but offered evidence that Fowler and Ratliff had been convicted of the same offenses as had been charged against appellant, including perjury and false swearing. Based on the military judge's ruling that the Government would be permitted to show Fowler's and Ratliff's convictions, the defense elected not to present the prior testimony.

Appellant contends that he was unfairly deprived of these two witnesses' testimony. The Government argues that the military judge's ruling was correct and that, in any event, appellant waived the issue by failing to offer the testimony of Fowler and Ratliff.

■ In *Luce v. United States*, 469 U.S. 38, 43, 105 S.Ct. 460, 464, 83 L.Ed.2d 443 (1984), the Supreme Court held that a defendant "must testify" to "preserve for review" a "claim of improper impeachment" by evidence of prior conviction. In *United States v. Sutton*, 31 MJ 11, 18 (1990), our Court applied *Luce* to courts-martial. *See also United States v. Williams*, 43 MJ 348, 355 ¶¶ 34, 37 (1995) (issue of admissibility of polygraph evidence not preserved because appellant did not testify at trial); *United States v. Gee*, 39 MJ 311, 312–14 (CMA 1994) (applies *Luce* to impeachment evidence other than prior conviction).

Ordinarily, we would follow *Luce* and *Sutton* and hold that appellant had not preserved the issue for appellate review because the defense did not present Ratliff's and Fowler's former testimony. We note, however, that appellant was tried before our *Sutton* decision. In *Sutton* we applied *Luce* prospectively, not retroactively. 31 MJ at 18. Previously, in *United States v. Cofield*, 11 MJ 422, 430–31 and n. 13 (CMA 1981), we had suggested that an accused need not testify to preserve an issue concerning admissibility of impeachment evidence for appellate review. *See* 31 MJ at 15–17. Thus, given the "mixed signals" sent by our Court, *id.* at 17, we recognize that defense counsel in this case may have believed that presenting Ratliff's and Fowler's testimony was not necessary to

preserve the appellate issue. Giving appellant the benefit of the doubt, we will treat this issue as preserved for appellate review and address its merits.

The version of Mil.R.Evid. 609 in effect at the time of trial provided as follows: "For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record during cross-examination...." Manual, *supra* (1994 ed.) In 1993, after appellant's court-martial, Mil.R.Evid. 609 was amended to remove "the limitation that the conviction may only be elicited during cross-examination." Drafters' Analysis, Manual, *supra* at A22–45 (1995 ed.).

Former testimony is an exception to the hearsay rule. *See* Mil.R.Evid. 804(b)(1). Mil.R.Evid. 806 provides: "When a hearsay statement ... has been admitted in evidence, the credibility of the declarant may be attacked ... by any evidence which would be admissible for those purposes if declarant had testified as a witness."

■ Based on these rules, it would have been permissible for the prosecution to impeach Ratliff and Fowler by eliciting their convictions or establishing them by public record during cross-examination, if they had testified in person. We reject appellant's argument that Ratliff and Fowler could be impeached only by evidence that was available and admissible at the time of their former testimony. For purposes of determining permissible impeachment evidence, Ratliff and Fowler are treated under Mil.R.Evid. 806 as though they had testified at appellant's trial. Accordingly, we hold that they were subject to impeachment by any means that would have been available and permissible for other witnesses at appellant's trial.

■ Of course, impeachment evidence is subject to the balancing test of Mil.R.Evid. 403. We recognize "the danger of unfair prejudice" arising from evidence that Ratliff and Fowler had been convicted of the same offenses as charged against appellant. We note, however, that the factual issue was the robbers' identity. The court members could

have rejected Ratliff's and Fowler's alibi testimony but still have had a reasonable doubt that appellant was one of the perpetrators. Appropriate limiting instructions could have minimized "the danger of unfair prejudice." Such instructions were never given because defense counsel withdrew the offered testimony.

A military judge's decision to admit evidence under Mil.R.Evid. 609 should not be disturbed on appeal " 'absent a clear showing of abuse' of discretion." *United States v. Brenizer*, 20 MJ 78, 82 (CMA 1985) (citations omitted). On this limited record, we find no abuse of discretion.

### Decision

The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

Chief Judge COX and Judge SULLIVAN concur.

CRAWFORD, Judge (concurring in part and in the result):

I concur in Part I and concur in the result in Part II of the majority opinion. Both the Military and Federal Rules of Evidence that were in existence at the time of a trial apply retroactively regardless whether the ruling is for the Government or for the defendant. *See, e.g., United States v. Siroky*, 44 MJ 394 (1996); *see also Tome v. United States*, 513 U.S. 150, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995); *Williamson v. United States*, 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994).

The same rule applies to the procedural rules concerning *in limine* motions. *See, e.g., Luce v. United States*, 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984); *United States v. Gee*, 39 MJ 311 (CMA 1994).

EVERETT, Senior Judge (concurring in part and dissenting in part):

I agree with the majority opinion except as to its conclusion concerning the risk-of-unfair-prejudice analysis required under Mil. R.Evid. 403, Manual for Courts–Martial, United States (1995 ed.). I recognize applicability of Mil.R.Evid. 609 so as to permit admissibility of the evidence of prior convictions that are in controversy here. Usually, however, such evidence speaks only to the credibility of the witness, with its impact on an accused limited to the resultant weight that the members are willing to give that witness' testimony.

Here, however, the evidence of previous convictions did more and, in the process, carried a substantial risk of impacting on the determination of this accused's guilt in a more direct and impermissible way. These particular prior convictions were for the same offenses then before the members of Bell's court-martial. Under these rather unusual circumstances, I see a substantial likelihood that this evidence sent an alluring but impermissible message to the members: "Two other courts-martial already have found that these three men, including this accused, are guilty of conspiracy."

In my view this "danger of unfair prejudice" "substantially outweighed" the "probative value" of the evidence as impeachment. Mil.R.Evid. 403. It is in just such unique situations as this that the Rule is most valuable. Accordingly, I would reverse the decision below, set aside the affected findings and the sentence, and authorize a rehearing.